## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FRED LADD,                                          )
                                                    )
    Plaintiff,                  )
                                                    )
        v.    )   Civil Action No.: 07-CV-01360 CKK
                                                    )
CHEMONICS INTERNATIONAL, INC,                       )
                                                    )
    Defendant.                  )


### MOTION FOR LEAVE TO FILE AN
### AMENDED ANSWER AND COUNTERCLAIM

Defendant, Chemonics International, Inc. ("Chemonics"), by its undersigned counsel, and pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure and Local Rule 15.1, respectfully submits this Motion for Leave to File an Amended Answer and Counterclaim. In accordance with Local Rule 15.1, the Amended Answer and Counterclaim is attached.[1]

### BACKGROUND

This action arises from Plaintiff Fred Ladd's ("Ladd") employment with Chemonics in Iraq in 2003. On November 30, 2006, Plaintiff filed a Complaint against Chemonics in state court in Colorado. The action was subsequently removed to federal court and transferred to this Court.

Plaintiff's Complaint alleges that Ladd was hired by Chemonics in September 2003 pursuant to a written employment contract (Complaint ¶ 4). Plaintiff was working in Iraq on October 23, 2003 when he was injured in an automobile accident. Ladd has not worked since that date (Complaint ¶ 7) and he has been receiving the maximum benefits under the Defense

---

[1] This Motion does not seek leave to amend the counterclaim. The counterclaim alleged in Chemonics' Answer and Counterclaim remains unchanged. This motion seeks leave to amend Chemonics' answer to add two affirmative defenses.

Base Act, 42 U.S.C. § 1651 *et seq.* ("DBA"), the applicable workers' compensation statute, since his injury. Ladd was released from Chemonics' employment roll in December 2004.

Ladd's principal cause of action alleges that Chemonics breached its employment agreement with Ladd. Ladd claims that he should have been paid his full salary from October 23, 2003 until he was released from Chemonics' employment roll in December 2004, even though he did not work during this period and he was receiving, and is receiving, the maximum compensation benefits allowed under the DBA.

Chemonics denies Ladd's allegations. It also asserts that Ladd's breach of contract claim is barred by the exclusive remedy provision of the DBA. Discovery closed on April 18, 2008. Chemonics moves to amend its answer solely to raise two additional affirmative defenses.

First, Chemonics moves for leave to raise the defense of collateral estoppel based on summary judgment entered against Ladd by the U.S. District Court for the Eastern District of North Carolina on March 25, 2008 in *Fred Ladd, et al. v. Research Triangle Institute*, Civil Action No. 5:06-CV-399. In that action, Ladd sued the general contractor for the contract he was working on in Iraq, the Research Triangle Institute's ("RTI"), for damages arising from his injuries. The Court granted RTI's motion for summary judgment based on the exclusive remedy provision of the DBA[2]. Second, Chemonics moves for leave to raise the defense of failure of consideration with respect to Ladd's claim for breach of contract.

---

[2] Chemonics answer and counterclaim was filed on August 2, 2007. One of the affirmative defenses raised in Chemonics' answer was estoppel. It is Chemonics' position that the affirmative defense of equitable doctrine includes the defense of collateral estoppel. Nevertheless, out of an abundance of caution, Chemonics moves for leave to file an amended answer to explicitly raise the defense of collateral estoppel.

<u>ARGUMENT</u>

I.     <u>CHEMONICS SHOULD BE GIVEN LEAVE TO AMEND ITS ANSWER</u>

The Federal Rules of Civil Procedure require that, after an answer has been filed, a party may amend its pleading only with leave of the Court or the other party's written consent.  Rule 15 (a)(2).[3]  However, Rule 15(a)(2) also states that the "Court should freely give leave when justice so requires"  *Id.*

Good cause clearly exists for Chemonics' motion for leave to amend its answer.  One of Chemonics' defenses to Ladd's breach of contract claim is that this claim is barred by the exclusive remedy provision of the DBA.  42 U.S.C. §1651(c).  Ladd's lawsuit against RTI, the general contractor for the contract upon which Ladd was working while employed by Chemonics, sought damages arising from the October 2003 automobile accident.  That is the same October 2003 automobile accident which was the event that gave rise to this lawsuit.

The Federal District Court in North Carolina granted RTI's motion for summary judgment because, under the borrowed servant doctrine, RTI was also protected by the DBA's exclusive remedy provision.  A copy of the order granting RTI's motion for summary judgment is attached as Exhibit A.

Chemonics asserts that Ladd's breach of contract claim is merely an attempt to obtain damages from Chemonics for lost wages sustained as a result of the October 2003 automobile accident.  Chemonics further asserts that Ladd is collaterally estopped from pursuing this claim because the applicability of the DBA's exclusive remedy provision has already been fully

---

[3]  On April 28, 2008, Mr. Kofoed's office called to seek the undersigned's consent for him to attend the status conference on May 2, 2008 by telephone.  Chemonics consented to Mr. Kofoed's request.  However, his office was also asked to have Mr. Kofoed call the undersigned to discuss Chemonics' motion for leave to amend its answer.  As of the time this motion was filed, Mr. Kofoed has not returned the undersigned's call.

litigated and resolved against Ladd. This affirmative defense could not be raised earlier because RTI's motion for summary judgment was only recently granted.

Good cause also exists for granting Chemonics leave to amend its answer to raise the affirmative defense of failure of consideration. Evidence adduced during discovery establishes that Ladd has not worked since the October 2003 automobile accident. Chemonics' motion for leave to amend the answer is merely a motion for leave to amend to conform to the evidence.

Granting Chemonics' leave to amend its answer will neither delay this action nor prejudice to Plaintiff. All of the relevant evidence bearing on the defense of failure of consideration has already been produced. Any evidence bearing on the defense of collateral estoppel is already in Ladd's possession or is available from the Clerk of the United States District Court for the Eastern District of North Carolina. Thus, this action will not be delayed if Chemonics' motion is granted.

<u>CONCLUSION</u>

Chemonics' motion for leave to file an amended answer and counterclaim should be granted.

Respectfully submitted,

By _/s/ James M. Mesnard_____
    James M. Mesnard, D.C. Bar No. 404835
    Seyfarth Shaw LLP
    815 Connecticut Avenue, N.W., Suite 500
    Washington, D.C.  20006
    Telephone - (202) 463-2400
    Facsimile - (202) 641-9233
    jmesnard@seyfarth.com

    Its Attorney

Dated:  April 29, 2008

4

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Motion For Leave To File An Amended

Answer And Counterclaim was served via ECF this 29th day of April, 2008, upon the following:

>     James McCahill
>     131 TollgateWay
>     Falls Church, Virginia 22046
>
>     David L. Kofoed, Esq.
>     The Kofoed Law Firm, LLC
>     6841 South Yosemite
>     Suite 3A
>     Englewood, Colorado 80012

>     ____/s/ James M. Mesnard_____
>     James Mesnard

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CV-399-BO

| | | |
|---|---|---|
| FRED LADD; and LORETTA SUZANNE LADD; | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **ORDER** |
| RESEARCH TRIANGLE INSTITUTE, a North Carolina Corporation, a.k.a. RESEARCH TRIANGLE INSTITUTE INTERNATIONAL; | ) ) ) ) ) ) | |
| Defendant. | ) ) ) | |

On August 30, 2007, Defendant filed a Motion to Dismiss or for Summary Judgment.

Defendant's Motion for Summary Judgment is hereby GRANTED.

## PROCEDURAL HISTORY

In October 2005, Plaintiffs Fred Ladd and Loretta Suzanne Ladd ("Plaintiffs") filed a

negligence action against Defendant Research Triangle Institute ("Defendant"). Plaintiffs

originally filed in the U.S. District Court for the District of Colorado. On September 25, 2006,

this case was transferred to the Eastern District of North Carolina. See Docket Report ("DR") #

70.

1

On August 30, 2007, Defendant filed a Motion for Summary Judgment. DR # 77. On

October 15, 2007, Plaintiffs filed their Response to Summary Judgment DR # 90. On October 31,

2007 Defendant filed a Reply to Plaintiffs' Response.

## FACTUAL BACKGROUND

In October 2003, Plaintiff Fred Ladd was allegedly injured in a car accident in Al Kut,

Iraq. At the time, Ladd was working as a municipal engineer on Defendant's construction

projects. A third-party nominally employed and paid Ladd while he was in Iraq. However, during

his tenure in Iraq, Ladd's work was overseen, directed, and controlled by Defendant. This third-

party commonly hired workers at the direction of Defendant.

After the accident, Plaintiff began receiving workman's compensation under the Defense

Base Act, ("DBA") 42 U.S.C. § 1651, et. seq. The DBA extends to defense bases the provisions

of the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901,

et. seq. The LHWCA is an exclusive remedy.

## DISCUSSION

### 1. Standard for Summary Judgment

A motion for summary judgment cannot be granted unless there are no genuine issues of

material fact for trial. FED. R. CIV. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party must demonstrate the lack of a genuine issue of fact for trial, and if that burden

is met, the party opposing the motion must "go beyond the pleadings" and come forward with

evidence of a genuine factual dispute. Id. at 324. The Court must view the facts and the

2

inferences drawn from the facts in the light most favorable to the nonmoving party. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Conclusory

allegations are not sufficient to defeat a motion for summary judgment. *Cf.* Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249 (1986) ("[T]he mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment.") (emphasis in original).

"In the end, the non-moving party must do more than present a 'scintilla' of evidence in

its favor. Rather, the non-moving party must present sufficient evidence such that reasonable

jurors could find by a preponderance of the evidence for the non-movant." Sylvia Dev. Corp. v.

Calvert County, 48 F.3d 810, 818 (4th Cir., 1995) (internal citations and quotations omitted).


### 2. Standard for the Defense Base Act, 42 U.S.C. § 1651, et. seq

The DBA states:

> "the provisions of the Longshoremen's and Harbor Workers' Compensation Act...shall
> apply in respect to the injury or death of any employee engaged in any employment...upon
> any lands occupied or used by the United States for military or naval purposes in any
> Territory or possession outside the continental United States...
> [or] under a contract entered into with the United States or any executive department,
> independent establishment, or agency thereof...where such contract is to be performed
> outside the continental United States...
> [or] under a contract approved and financed by the United States or any executive
> department, independent establishment, or agency thereof...where such contract is to be
> performed outside the continental United States."

42 U.S.C. § 1651 (a) (2); (4)-(5).

"The liability of an employer, contractor (or any subcontractor or subordinate

subcontractor with respect to the contract of such contractor) under [the DBA] shall be exclusive

3

and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of [the DBA], under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into." 42 U.S.C. § 1651 (c).

"Congress enacted the DBA in 1941, and it provides workers' compensation coverage for certain employees working outside the continental United States at military bases or on other national defense projects. The provisions of the LHWCA govern a workers' compensation claim under the DBA except to the extent that the DBA modifies a provision of the LHWCA...Thus, if a provision of the DBA modifies the LHWCA, the DBA provision controls in a DBA case." Lee v. Boeing Co., 123 F.3d 801, 804 (4th Cir., 1997) (internal citation omitted).

## 3. Standard for the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et. seq

"In the case of an employer who is a subcontractor, only if such subcontractor fails to secure the payment of compensation shall the contractor be liable for and be required to secure the payment of compensation." 33 U.S.C. § 904 (a). "The liability of an employer prescribed in [33 USCS § 904] shall be exclusive and in place of all other liability of such employer to the employee...For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation." 33 U.S.C. § 905(a).

"Covered employees cannot bring a personal injury action against their employer; their

4

only remedy with regard to their employer is through the LHWCA." <u>White v. Bethlehem Steel</u> <u>Corp.</u>, 222 F.3d 146, 148 (4th Cir., 2000).

**4. <u>Standard for a Borrowed Servant under the LHWCA</u>**

"One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation." <u>Standard Oil Co. v. Anderson</u>, 212 U.S. 215, 220 (1909) (using the term "pro hac vice employee" to describe a borrowed servant.)

"While the LHWCA does not explicitly adopt the borrowed servant doctrine, the word employer in 33 U.S.C. § 905 (a) encompasses both general employers and employers who borrow a servant from that general employer. A person can be in the general employ of one company while at the same time being in the particular employ of another with all the legal consequences of the new relation." <u>White v. Bethlehem Steel Corp.</u>, 222 F.3d 146, 149 (4th Cir., 2000) (internal citations and quotations omitted). The test for a borrowed servant involves discovering who has "the power to control and direct the servants in the performance of their work." <u>Id</u>. A court must distinguish "between authoritative direction and control, and mere suggestion as to details or the necessary cooperation." <u>Id.</u>

"When the borrowing employer possesses this authoritative direction and control over a particular act, it in effect becomes the employer. In that situation, the only remedy of the employee is through the LHWCA." <u>Id</u>. A plaintiff bringing suit against a particular defendant is in itself strong evidence that a duty of care existed on the part of defendant, and that defendant

5

controlled the plaintiff. Id. at 150.


### 5. The DBA and LHWCA Apply to Defendant's Employees

The Court first finds that the DBA applies to Defendant's employees in Iraq at the time of

the accident. Then, as now, U.S. military forces occupied Iraq. Defendants entered into contracts

with the United States and/or were financed by the United States, and Defendant's contract was

performed outside the continental United States. Therefore, the DBA applied to Defendant's

employees at the time of the accident. Because the DBA is merely an extension of the LHWCA,

the Court therefore finds that the provisions of the LHWCA also applied to Defendant's

employees at that time.


### 6. Ladd is a Borrowed Servant 33 U.S.C. § 905 (a) of the LHWCA

Next, the Court must be determined whether Plaintiff Fred Ladd was an employee of the

Defendant at the time of the accident. The Court finds that Ladd was a "borrowed servant" of the

Defendant at the time of the accident, and therefore was Defendant's employee.

Nominally, Ladd was not an employee of Defendant, but of a third party. Defendant did

not directly recruit Ladd or directly pay him. However, case law has long recognized the legal

fiction of the pro hac vice employee, or "borrowed servant." A borrowed servant is an employee

who works for one person or company but nevertheless, for a particular job or purpose, a

different person or company authoritatively directs or controls the employee.

Defendant certainly had control over Ladd at the time of the accident. According to

Ladd's own deposition, he worked exclusively on Defendant's projects in Iraq. Ladd admitted

6

that he was accountable to Defendant for his work and that Defendant's supervisor was the "main person" in charge of Ladd in Iraq. Defendant had the power to fire Ladd. Defendant had the power to move Ladd to different parts of Iraq. Ladd's work had to live up to the expectations of the Defendant. According to Ladd, Defendant "directed or dictated" him while he was in Iraq. Ladd's nominal employer was basically a recruiter for Defendant. In their Complaint, Plaintiffs' state that Defendant assigned and ordered Ladd to go on the trip on which he was injured, further demonstrating Defendant's direction and control over Ladd at this time. Ladd reported directly to Defendant's supervisor, and this supervisor monitored Ladd's performance while in Iraq. These facts demonstrate that Defendant exercised authoritative control and direction over Ladd.

The fact that Plaintiffs bring suit at all against Defendant is evidence of the extent of the control Defendant had over Ladd; the suit itself assumes a duty of care. Even if Defendant did not have exclusive control over Ladd at all times while he was in Iraq, Defendant certainly maintained authority over the employee at the time of the accident, as Ladd was ordered and directed onto this mission by the Defendant exclusively. Defendant supervised, directed, and controlled Ladd's actions whilst in Iraq, almost a textbook example of a pro hac vice employee.

Plaintiffs argue that the final sentence of 33 U.S.C. § 905 (a) of the LHWCA, as amended in 1984, specifically excludes an employee of a subcontractor from being a borrowed servant: "For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation." 33 U.S.C. § 905 (a). Neither party contests the fact that Ladd's nominal employer secured the payment of such compensation.

The Court disagrees with Plaintiffs' argument. The Fourth Circuit decided its standard for

7

borrowed servants under the LHWCA in <u>White v. Bethlehem Steel Corp.</u>, 222 F.3d 146 (4th Cir., 2000), sixteen years after the adoption of this amendment. The Fourth Circuit clearly analyzed the LHWCA in light of this amendment and found that borrowed servants were still encompassed by the term "employer" in the LHWCA. Therefore, Plaintiffs' argument here is negated by *stare decisis.* See <u>White v. Bethlehem Steel Corp.</u> at 149.

There are no genuine issues of material fact as to the claim that Defendant exercised authority and control over Ladd at all times while in Iraq, thereby making Plaintiff Fred Ladd a borrowed servant of the Defendant. For all these reasons, the Court finds that Ladd was a "borrowed servant" under 33 U.S.C. § 905 (a) of the LHWCA.

### 7. <u>Plaintiffs' Exclusive Remedy is Worker's Compensation under the LHWCA</u>

As there are no genuine issues of material fact as to Plaintiff Fred Ladd's being a borrowed servant of the Defendant under the LHWCA, he is therefore subject to the same remedies as a regular employee of Defendant under the LHWCA. As the LHWCA is exclusive, all other claims by Plaintiffs are barred. Therefore, summary judgment is appropriate in favor of Defendant on these claims.

8

## **CONCLUSION**

Defendant's Motion for Summary Judgment is GRANTED.

SO ORDERED.

This ___25___ day of March, 2008.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:06-CV-399-BO

Fred Ladd and Loretta Suzanne Ladd,          )
                                             )
v.                                           )          **JUDGMENT**
                                             )
Research Triangle Institute, a North         )
Carolina Corporation, a.k.a. Research        )
Triangle Institute International             )


**Decision by Court.** This action came to trial before the Court. The issues have been tried and a decision has been rendered.

**IT IS ORDERED, ADJUDGED AND DECREED** that the Defendant's Motion for Summary Judgment is GRANTED.. (BOYLE, J)

**This Judgment Filed and Entered on March 27, 2008, and Copies To:**

William W. Plyler                    Clifton L. Brinson
McMillan, Smith & Plyler             Smith, Anderson, Blount, Dorsett, Mitchell
P O Box 150                               & Jernigan
Raleigh, NC 27602                    P O Box 2611
                                     Raleigh, NC 27601


March 27, 2008                       /s/ Dennis P. Iavarone,
                                         Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRED LADD,                                    )
                                              )
            Plaintiff,                        )
                                              )        Civil Action No.  07-1360 CKK
      v.                                      )
                                              )
CHEMONICS INTERNATIONAL, INC.,                )
                                              )
            Defendant.                        )

<u>AMENDED ANSWER AND COUNTERCLAIM</u>

Defendant, Chemonics International, Inc. ("Chemonics"), by its undersigned counsel, and

pursuant to Rule 8 and Rule 12(b) of the Federal Rules of Civil Procedure, respectfully files this

Amended Answer and Counterclaim and states:

<u>ANSWER</u>

<u>GENERAL ALLEGATIONS</u>

1.     Chemonics does not have enough information to either admit or deny the

allegations in Paragraph 1 of the Complaint, and therefore these allegations are denied.

2.     Chemonics admits that its principal place of business is in Washington, D.C.

Chemonics denies that it is incorporated under the laws of the District of Columbia.

3.     Chemonics admits that it sent an Employment Agreement to Plaintiff in Colorado,

that Plaintiff signed the agreement and returned it to Chemonics and, at that point, Plaintiff was a

Chemonics' employee.  Chemonics also admits that Plaintiff was required to pass a medical

examination and to be approved by the Research Triangle Institute ("RTI") and the U.S. Agency

for International Development ("USAID") before he could begin work for Chemonics in Iraq.

Chemonics denies the remaining allegations in Paragraph 3 of the Complaint.  Chemonics asserts

that the Employment Agreement speaks for itself.  Chemonics admits, however, that it was a

subcontractor on a contract between USAID and RTI on the Iraq Local Governance Program

("LGP").  Chemonics also admits that, under the subcontract, its recruited technical staff,

including Plaintiff, to work in Iraq.

FIRST CLAIM FOR RELIEF

4.      Chemonics denies the allegations in Paragraph 4 of the Complaint.  Chemonics

admits, however, that on September 11, 2003 Plaintiff executed the Employment Agreement

with Chemonics.

5.      Chemonics admits that Plaintiff was hired to work on the LGP as a Municipal

Utility Specialist and that his salary was $131,250 per year, or $10,937.50 per month.

Chemonics also admits the Employment Agreement stated that Chemonics would not be liable

for Plaintiff's salary or related costs beyond the date of termination.  Chemonics denies the

remaining allegations in Paragraph 5 of the Complaint.  Chemonics specifically denies that Ladd

was entitled to be paid his salary or any "cash payments and allowances" if he did not perform

the work and other duties described in Paragraph II of the Employment Agreement.

6.      Chemonics admits that Plaintiff began working in Iraq and that he sustained a

work-related injury while in Iraq.  Chemonics denies that Plaintiff complied with all provisions

of the Employment Agreement.  Chemonics does not have enough information to either admit or

deny the remaining allegations in Paragraph 6 of the Complaint, and therefore, these allegations

are denied.

7.      Chemonics does not have sufficient information to either admit or deny the

allegations in Paragraph 7 of the Complaint, and therefore, these allegations are denied.

8.      Chemonics denies the allegations in Paragraph 8 of the Complaint.

9.      Chemonics admits that Plaintiff is receiving temporary total disability benefits

under the Defense Base Act , 42 U.S.C. §1651 *et seq*., at the maximum compensation rate of

2

$1,030.78 per week.  Chemonics denies the remaining allegations in Paragraph 9 of the Complaint.

10.    Chemonics admits that Exhibit C is a copy of a letter sent to Plaintiff on approximately December 8, 2004.  Chemonics denies the remaining allegations in Paragraph 10 of the Complaint.

11.    Chemonics denies the allegations in Paragraph 11 of the Complaint.

12.    Chemonics denies the allegations in Paragraph 12 of the Complaint.

13.    Chemonics denies the allegations in Paragraph 13 of the Complaint.

All other allegations set forth in Plaintiff's Complaint not heretofore admitted or denied are hereby specifically and fully denied.

PRAYER FOR RELIEF

Chemonics denies the Plaintiff is entitled to any relief any whatsoever.

AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

Lack of personal jurisdiction.

SECOND AFFIRMATIVE DEFENSE

Improper venue.

THIRD AFFIRMATIVE DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which relief may be granted.

FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation.

FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel and laches.

3

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of *Res Judicata* and/or collateral estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are preempted, in whole or in part, by the applicable workers' compensation statute.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate damages properly.

## NINTH AFFIRMATIVE DEFENSE

Failure of consideration.

## TENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff's Complaint may be construed as seeking punitive damages, Plaintiff's claim for punitive damages are barred because the alleged acts or omissions of Defendant fails to raise to the level required to sustain an award of punitive damages, do not evidence a malicious, reckless or fraudulent intent to deny Plaintiff his protected rights and are not so wanton or willful as to support an award of punitive damages.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's cause of action for intentional infliction of emotional distress is barred by the exclusive remedy provision of the Defense Base Act.

WHEREFORE, Chemonics respectfully requests that judgment dismissing the Complaint in its entirety be entered in its favor and that Chemonics be awarded its costs, inclusive of attorneys' fees and such other relief as the Court may deem just and proper.

DC1 30228782.1

COUNTERCLAIM

THE PARTIES

1.     Chemonics is a Delaware corporation with its principal place of business at 1717 H Street, N.W., Washington, D.C. 20006.

2.     On information and belief, Plaintiff / Counterclaim Defendant, Fred Ladd ("Ladd") is a citizen of the State of Colorado.

JURISDICTION & VENUE

3.     The Court has jurisdiction over the subject matter of this Counterclaim.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and the forum selection clause contained in the Employment Agreement.

FACTS

5.     On September 11, 2003, Ladd executed an Employment Agreement with Chemonics.  A copy of that Employment Agreement is attached to Ladd's Complaint as Exhibit A.

6.     Paragraph XII of the Employment Agreement states that "[t]he parties hereby expressly agree and acknowledge that the courts of the District of Columbia shall have sole and exclusive jurisdiction over any dispute arising under or otherwise relating to this agreement."

7.     Paragraph XII of the Employment Agreement also states "[t]he parties agree that any such disputes shall not be brought before any foreign court . . . but shall be under the sole and exclusive jurisdiction of the Courts of the District of Columbia . . . ."

8.     The Employment Agreement further requires that any party breaching this provision is liable to the nonbreaching party "to liquidated damages at a sum equal to three (3) months salary of the employee's last wage under this agreement and preceding the breach."

5

9.      By executing the Employment Agreement, Ladd agreed to the requirements

within the Employment Agreement, which included bringing all disputes in the Courts of the

District of Columbia.

10.     On approximately November 30, 2006, Ladd initiated this action by filing suit

against Chemonics in the District Court for El Paso County, Colorado.  The gravamen of Ladd's

Complaint is an allegation that Chemonics breached the Employment Agreement.

11.     Ladd breached the forum selection provision in the Employment Agreement by

initiating this action in the District Court of El Paso County, Colorado.

12.     Accordingly, Chemonics is entitled to liquidated damages in the amount of

$32,812.50, and any other relief the Court may deem proper.

Respectfully submitted,

CHEMONICS INTERNATIONAL, INC.


By:   /s/ James M. Mesnard
      James M. Mesnard, Esq., D.C. Bar No. 404835
      Seyfarth Shaw LLP
      815 Connecticut Avenue, N.W., Suite 500
      Washington, D.C.  20006-4004
      (202) 463-2400
      (202) 828-5393 (facsimile)

Dated:  April 29, 2008

<u>CERTIFICATE OF SERVICE</u>

I certify that a true copy of the foregoing Amended Answer and Counterclaim was served by first class mail, postage prepaid, this 29th day of April, 2008, on:

>    David L. Kofoed, Esq.
>    The Kofoed Law Firm, LLC
>    6841 South Yosemite
>    Suite 3A
>    Centennial, CO  80012

>    and via first class mail to:

>    James McCahill, Esq.
>    131 TollgateWay
>    Falls Church, VA  22046



   /s/ James M. Mesnard_____
James M. Mesnard

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRED LADD, | ) |
| | ) |
| Plaintiff, | ) |
| | )    Civil Action No.  07-1360 CKK |
| v. | ) |
| | ) |
| CHEMONICS **INTERNATIONAL**, INC., | ) |
| | ) |
| Defendant. | ) |

## **AMENDED** ANSWER AND COUNTERCLAIM

Defendant, Chemonics **International**, Inc. ("Chemonics"), by its undersigned counsel,

and pursuant to Rule 8 and Rule 12(b) of the Federal Rules of Civil Procedure, respectfully files

this **Amended** Answer and Counterclaim and states:[1]

## ANSWER

## GENERAL ALLEGATIONS

1.      Chemonics does not have enough information to either admit or deny the

allegations in Paragraph 1 of the Complaint, and therefore these allegations are denied.

2.      Chemonics admits that its principal place of business is in Washington, D.C.

Chemonics denies that it is incorporated under the laws of the District of Columbia.

3.      Chemonics admits that it sent an Employment Agreement to Plaintiff in Colorado,

that Plaintiff signed the agreement and returned it to Chemonics and, at that point, Plaintiff was a

Chemonics' employee.  Chemonics also admits that Plaintiff was required to pass a medical

examination and to be approved by the Research Triangle Institute ("RTI") and the U.S. Agency

for International Development ("USAID") before he could begin work for Chemonics in Iraq.

---

[1] ~~Plaintiff has not identified the correct Defendant.  Plaintiff was employed by Chemonics International, Inc.~~

Chemonics denies the remaining allegations in Paragraph 3 of the Complaint. Chemonics asserts

that the Employment Agreement speaks for itself. Chemonics admits, however, that it was a

subcontractor on a contract between USAID and RTI on the Iraq Local Governance Program

("LGP"). Chemonics also admits that, under the subcontract, its recruited technical staff,

including Plaintiff, to work in Iraq.

FIRST CLAIM FOR RELIEF

4.     Chemonics denies the allegations in Paragraph 4 of the Complaint. Chemonics

admits, however, that on September 11, 2003 Plaintiff executed the Employment Agreement

with Chemonics.

5.     Chemonics admits that Plaintiff was hired to work on the LGP as a Municipal

Utility Specialist and that his salary was $131,250 per year, or $10,937.50 per month.

Chemonics also admits the Employment Agreement stated that Chemonics would not be liable

for Plaintiff's salary or related costs beyond the date of termination. Chemonics denies the

remaining allegations in Paragraph 5 of the Complaint. Chemonics specifically denies that Ladd

was entitled to be paid his salary or any "cash payments and allowances" if he did not perform

the work and other duties described in Paragraph II of the Employment Agreement.

6.     Chemonics admits that Plaintiff began working in Iraq and that he sustained a

work-related injury while in Iraq. Chemonics denies that Plaintiff complied with all provisions

of the Employment Agreement. Chemonics does not have enough information to either admit or

deny the remaining allegations in Paragraph 6 of the Complaint, and therefore, these allegations

are denied.

7.     Chemonics does not have sufficient information to either admit or deny the

allegations in Paragraph 7 of the Complaint, and therefore, these allegations are denied.

2

8.    Chemonics denies the allegations in Paragraph 8 of the Complaint.

9.    Chemonics admits that Plaintiff is receiving temporary total disability benefits under the Defense Base Act , 42 U.S.C. §1651 *et seq.*, at the maximum compensation rate of $1,030.78 per week.  Chemonics denies the remaining allegations in Paragraph 9 of the Complaint.

10.    Chemonics admits that Exhibit C is a copy of a letter sent to Plaintiff on approximately December 8, 2004.  Chemonics denies the remaining allegations in Paragraph 10 of the Complaint.

11.    Chemonics denies the allegations in Paragraph 11 of the Complaint.

12.    Chemonics denies the allegations in Paragraph 12 of the Complaint.

13.    Chemonics denies the allegations in Paragraph 13 of the Complaint.

All other allegations set forth in Plaintiff's Complaint not heretofore admitted or denied are hereby specifically and fully denied.

PRAYER FOR RELIEF

Chemonics denies the Plaintiff is entitled to any relief any whatsoever.

AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

Lack of personal jurisdiction.

SECOND AFFIRMATIVE DEFENSE

Improper venue.

THIRD AFFIRMATIVE DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which relief may be granted.

3

FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation.

FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel and laches.

SIXTH AFFIRMATIVE DEFENSE

**Plaintiff's claims are barred, in whole or in part, by the doctrine of *Res Judicata* and/or collateral estoppel.**

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are preempted, in whole or in part, by the applicable workers' compensation statute.

~~SEVENTH~~**EIGHTH** AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate damages properly.

~~EIGHTH~~**NINTH** AFFIRMATIVE DEFENSE

**Failure of consideration.**

**TENTH AFFIRMATIVE DEFENSE**

To the extent that Plaintiff's Complaint may be construed as seeking punitive damages, Plaintiff's claim for punitive damages are barred because the alleged acts or omissions of Defendant fails to raise to the level required to sustain an award of punitive damages, do not evidence a malicious, reckless or fraudulent intent to deny Plaintiff his protected rights and are not so wanton or willful as to support an award of punitive damages.

~~NINTH~~**ELEVENTH** AFFIRMATIVE DEFENSE

Plaintiff's cause of action for intentional infliction of emotional distress is barred by the exclusive remedy provision of the Defense Base Act.

4

WHEREFORE, Chemonics respectfully requests that judgment dismissing the Complaint in its entirety be entered in its favor and that Chemonics be awarded its costs, inclusive of attorneys' fees and such other relief as the Court may deem just and proper.

DCI-30228767.1 / 44138-000017
DCI 30228782.1

COUNTERCLAIM

THE PARTIES

1.    Chemonics is a Delaware corporation with its principal place of business at 1717 H Street, N.W., Washington, D.C. 20006.

2.    On information and belief, Plaintiff / Counterclaim Defendant, Fred Ladd ("Ladd") is a citizen of the State of Colorado.

JURISDICTION & VENUE

3.    The Court has jurisdiction over the subject matter of this Counterclaim.

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and the forum selection clause contained in the Employment Agreement.

FACTS

5.    On September 11, 2003, Ladd executed an Employment Agreement with Chemonics.  A copy of that Employment Agreement is attached to Ladd's Complaint as Exhibit A.

6.    Paragraph XII of the Employment Agreement states that "[t]he parties hereby expressly agree and acknowledge that the courts of the District of Columbia shall have sole and exclusive jurisdiction over any dispute arising under or otherwise relating to this agreement."

7.    Paragraph XII of the Employment Agreement also states "[t]he parties agree that any such disputes shall not be brought before any foreign court . . . but shall be under the sole and exclusive jurisdiction of the Courts of the District of Columbia . . . ."

8.    The Employment Agreement further requires that any party breaching this provision is liable to the nonbreaching party "to liquidated damages at a sum equal to three (3) months salary of the employee's last wage under this agreement and preceding the breach."

9.    By executing the Employment Agreement, Ladd agreed to the requirements within the Employment Agreement, which included bringing all disputes in the Courts of the District of Columbia.

10.    On approximately November 30, 2006, Ladd initiated this action by filing suit against Chemonics in the District Court for El Paso County, Colorado. The gravamen of Ladd's Complaint is an allegation that Chemonics breached the Employment Agreement.

11.    Ladd breached the forum selection provision in the Employment Agreement by initiating this action in the District Court of El Paso County, Colorado.

12.    Accordingly, Chemonics is entitled to liquidated damages in the amount of $32,812.50, and any other relief the Court may deem proper.

Respectfully submitted,

CHEMONICS INTERNATIONAL, INC.


By:    /s/ James M. Mesnard
       James M. Mesnard, Esq., D.C. Bar No. 404835
       Seyfarth Shaw LLP
       815 Connecticut Avenue, N.W., Suite 500
       Washington, D.C.  20006-4004
       (202) 463-2400
       (202) 828-5393 (facsimile)

Dated:  ~~August 2, 2007~~**April 29, 2008**

7

CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing **Amended** Answer and Counterclaim was served

by first class mail, postage prepaid, this ~~2~~nd**29**th day of ~~August, 2007,~~**April, 2008,** on:

> ~~Fred Ladd~~
> ~~1975 Spring Valley Drive~~
> ~~Colorado, Springs  80921~~
> **David L. Kofoed, Esq.**
> **The Kofoed Law Firm, LLC**
> **6841 South Yosemite**
> **Suite 3A**
> **Centennial, CO  80012**
>
> **and via first class mail to:**
>
> **James McCahill, Esq.**
> **131 TollgateWay**
> **Falls Church, VA  22046**

                                        /s/ James M. Mesnard
                                        James M. Mesnard