## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FRED LADD                    )
                                )
      Plaintiff,           )
                                )
      v.                  )    CIVIL ACTION NO. 07-1360 (CKK/JMF)
                                )    Next scheduled court deadline:
CHEMONICS INTERNATIONAL, INC.  )    June 6, 2008 – Deadline for Plaintiff to
a/k/a CHEMONICS           )    Re-File Motion for Partial Summary
                                )    Judgment
      Defendant.         )

## MOTION FOR PARTIAL SUMMARY JUDGMENT
## RULE 56

Plaintiff, Fred Ladd, by and through his attorneys of record moves this Court for

Partial Summary Judgment pursuant to Rule 56 to the effect that the defendant is liable

to the plaintiff under the terms of the Employment Agreement for his salary and

appropriate collateral benefits for the period of time during his employment and prior to

his date of employment termination of December 23, 2004 on the grounds that there is

no genuine issue of material fact regarding such liability and that plaintiff is entitled to a

judgment as a matter of law on that issue.  In addition, plaintiff moves the Court for an

order to defer all other claims for collateral benefits and damages for further

proceedings as may be directed by the Court.

In support of his Motion, Mr. Ladd respectfully requests the Court consider the Memorandum Brief in Support and Appendix filed contemporaneously herewith.

Dated:  May 29, 2008.                      Respectfully submitted,

                                           THE KOFOED LAW FIRM, LLC


                                           /s/ David L. Kofoed
                                           David L. Kofoed, #3807
                                           Attorney at Law
                                           6841 S. Yosemite St., Suite 3A
                                           Centennial, CO 80112
                                           (303) 721-8877
                                           (303) 721-9352 fax
                                           email:  kofoedlawfirm@qwest.net


                                           /s/ John A. McCahill
                                           John A. McCahill, #146159
                                           Attorney at Law
                                           131 Tollgate Way
                                           Falls Church, Virginia 22046
                                           (703) 819-1662
                                           (202) 783-6031 (fax)
                                           email:  jamccahill@aol.com

                                           *Attorneys for Plaintiff, Fred Ladd*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29th day of May, 2008 a true and correct copy of the foregoing MOTION FOR PARTIAL SUMMARY JUDGMENT, RULE 56 and MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT, APPENDIX, and ORDER was e-filed with the Clerk of the US District Court with a copy deposited in the US Mail, postage prepaid to the following:

James M. Mesnard
SEYFARTH SHAW LLP
815 Connecticut Avenue, NW
Suite 500
Washington, DC 20006-4004


/s/ Patty Thompson
Patty Thompson

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRED LADD                                     )
                                              )
    Plaintiff,                        )
                                              )
    v.                                )          CIVIL ACTION NO. 07-1360
                                              )          (CKK/JMF)
                                              )          Next scheduled court deadline:
CHEMONICS INTERNATIONAL, INC.                 )          June 6, 2008 – Deadline for
a/k/a CHEMONICS                               )          Plaintiff to Re-File Motion for
                                              )          Partial Summary Judgment
    Defendant.                        )


## MEMORANDUM IN SUPPORT OF MOTION FOR
## PARTIAL SUMMARY JUDGMENT

On or about September, 2003 plaintiff entered into an agreement with the defendant entitled "Employment Agreement" a copy of which is attached hereto as Appendix 1.

The foregoing Employment Agreement prepared solely by the defendant Chemonics, with no input from Mr. Ladd provided in pertinent part as follows:

The employment agreement provided:

> "IV.  Salary
>
> The base salary for the employee for the first year of project work has been proposed at US $131,250 per year, or a monthly rate of US $10,937.50.  Salary is pending approval by RTI/USAID.  Annual salary increases may be granted in accordance with Chemonics customary policy and are subject to the approval of USAID.  Neither the rate nor amount of salary increase is guaranteed under the terms of this agreement.  Salary increases are also subject to company guidelines, individual performance, and client approvals."

1

In addition, the employee would be entitled to receive cash payments and allowances relating to US Aid allowances as provided under Paragraph V of the said Employment Agreement.  A copy of Mr. Ladd's original Earning Statement for the month of October 2003 is attached as Appendix 2.  The Employment Agreement further provides under Paragraph VI that the "the employee shall be considered an employee at will for the duration of employment covered under this agreement.  Employment may be terminated by the employee or by Chemonics at any time and for any reason."  The contract provided further that "even if a termination was made for dereliction of duty or gross failure to perform satisfactory or should employee voluntarily resign without obtaining prior written consent of Chemonics, that Chemonics will not be liable for salary or related costs beyond the date of employment termination."

Mr. Ladd was severely injured in a work related accident on October 23, 2003 was rendered totally disabled and still remains disabled.  (Ladd Affidavit, Appendix 3).

Mr. Ladd's employment was not terminated pursuant to the contract until the letter from Chemonics transmitted under date of December 8, 2004 was sent to him advising of his employment termination date of December 23, 2004.  A copy of the official termination letter and confirmation of the termination date are attached at Appendix 4 and 5.

The defendant admittedly has failed to pay the salary provided for in the contract from the date of the Earning Statement attached as Appendix 2 for the month of October 2003.  See Paragraphs 11 and 15 of Answers to

Interrogatories of Mr. Ladd relating to the amounts paid and the amounts due pursuant to the Employment Contract, Appendix 6.

In addition, we ask the Court to note the answer to the complaint filed by the defendant admits at Paragraph 5 that plaintiff's salary was $131,250 per year or $10,937.50 per month and further admits that the Employment Agreement between plaintiff and Chemonics stated that Chemonics would not be liable for plaintiff's salary or related costs beyond the date of employment termination. Defendant further admits at Paragraph 6 that plaintiff began working in Iraq and that he sustained work related injuries while in Iraq.

The contract which was entered into between the parties was put together by Chemonics and plaintiff had nothing whatsoever to do with drafting the document (Answer to Interrogatory No. 1, Appendix 6) Also see Affidavit of Ladd, Appendix 3.

The disabling injuries to Mr. Ladd occurred on October 23, 2003 when the company Research Triangle Institute to whom he was assigned by Chemonics for support in Iraq in turn assigned him to ride in a vehicle to a project outside of Al Kut Iraq.  The vehicle was being driven by an Iraqi who lost control of the vehicle and it was caused to crash into the Tigress River. The injuries sustained by Mr. Ladd are as described in his Answers to Interrogatory No. 3, Appendix 6. Also see Affidavit of Mr. Ladd, Appendix 3.  In addition, see the doctors report of Dr. Lamond regarding his continued disability, Appendix 7.

Plaintiff further identifies in his response to Interrogatory Nos. 11 and 15 the items of salary and allowances and other benefits to which he was entitled (Appendix 6).

The defendant has failed to pay any of the said agreed upon compensation plus benefits except for the part of September and the first full month of his employment of October 2003 as indicated above.  The only amount that Mr. Ladd has received is his benefits under the provisions of the Defense Base Act.  (Response to Interrogatory No. 11, Appendix 6).

In addition to the above, the defendant has failed to pay the benefits under that Defense Base Act which included the payment to Landstuhl Hospital in Germany which amount due is $63,488.37.

In addition to the failure to pay the basic salary as referred to above which amount essentially appears to be agreed upon, although defendant's deny that it is due, plaintiff also has several other claims for benefits that the defendant has failed to pay such as the medical bill from the Landstuhl Hospital in Germany, which amount due exceeds $63,488.37 (Appendix 8), has refused to pay for the 29 months of health insurance for Mr. Ladd's family which was promised in the letter of December 8, 2004 (Appendix 4), and failed to provide the life insurance and long term disability insurance which plaintiff would have been entitled. Although plaintiff does assert claims for these additional amounts, it is understood that these claims and the amounts of same are disputed by defendant and therefore, the amounts of these claims pose questions of fact and

are not yet properly the subject for a summary judgment, but would be the subject for determination in future proceedings as the Court may direct.

Therefore, plaintiff seeks only partial summary judgment and a determination of law that the defendant is liable to the plaintiff as an employee under the terms of the Employment Contract until Mr. Ladd's employment was terminated on December 4, 2004 for at least the admitted amount of $131,250 of unpaid salary. It is requested that the remaining benefits and damages claimed by the plaintiff be deferred for further hearings and proceedings as the Court may direct.

## LEGAL ARGUMENT

The Employment Agreement prepared by the defendant provided in part as follows:

> "VI. Employment at will
>
> The employee shall be considered an employee at will for the duration of employment covered under this Agreement. Employment may be terminated by the employee or by Chemonics at any time and for any reason. No person other than Chemonics' President has the authority to enter into any oral or written employment agreement for a specific period of time or make any agreement contrary to this clause."

> and

> "VII. Employment may be terminated at any time by Chemonics or by the employee for any reason. Should the employee be terminated for misconduct, dereliction of duty, or gross failure to perform satisfactorily, or should the employee voluntarily resign without obtaining prior written consent from Chemonics' home office, Chemonics will not be liable for salary or related costs beyond the date of employment termination. When terminated for the reasons listed here in VII, the employee shall also be liable for any relocation costs not allowable for U.S. government reimbursement, as stated in VIII.5 of this agreement."

5

Therefore, even if Chemonics contends that Fred Ladd was terminated for "gross failure to perform satisfactorily" they nevertheless would still be liable for salary and related benefits prior to the date of employment termination.  It is clear that the employment termination date was December 23, 2004.  We contend that the defendant is clearly liable for at least the admitted salary due to the plaintiff from November 2003 through December 2004 of $131,250.  The remaining issues regarding the collateral benefits and damages due the plaintiff are we believe, disputed and therefore legitimate questions of fact to be determined by appropriate future proceedings as the Court may direct.

We contend, therefore, that the contract really has no ambiguity attached to it in relation to the obligation of defendant to pay plaintiff's salary and related benefits until his employment is terminated.  However, even in the event that the Court determines there was some ambiguity in the language, it has been well established in our law including the law of this Federal Court jurisdiction that ambiguous provisions in a contract are construed most strongly against the drafter of the contract.  C.A  D.C. 1997, <u>Cole v. Burns Intern</u>, SEC.Services, 105 Fed.3d 1465, 323 US App. DC 133.   Also CA.D.C. 1991, <u>Carey Canada, Inc. v. Columbia</u>, CAS 940 Fed 2d 1548, 291 US App. DC 284.

Also see Restatement  (Second) of Contractor, §206 holding that when interpreting a contract the Court should construe ambiguous language against the interest of the party who drafted it.

In the case of <u>Counsel Alain Aboredaram S.A.v. dGroote,</u> 460 Fed.3d 46, 373 US App. DC 110, C.A.D.C. 2006, the court held that the initial interpretation of a contract as a matter of law is for the Court to decide and included in that initial interpretation is a threshold question of whether the terms are ambiguous and further that where language and interferences to be drawn from a contract are unambiguous, a district court may construe a contract as a matter of law and grant judgment accordingly. Also see <u>Schneider v. Dumbarton Developers, Inc.</u>, 767 F.2d.1007, 247 US App. D.C. 217.

Under District of Columbia law, where parties to a contract have executed a completely integrated agreement, it supercedes all other understandings and agreements between the parties whether consistent or inconsistent.  D.C.2005 Restatement (Second) of Contracts, Sections 209 (1), <u>Daisley v. Riggs Bank, NA,</u> 372 F.Supp.2d 61.

We believe that the contract is clear and that plaintiff continued as an employee under the terms of that contract until the termination of December 23, 2004.  Accordingly, we ask the Court for a determination as a matter of law that Chemonics is liable to the plaintiff as an employee under the terms of the Employment Contract for his salary of $131,250 up through December 4, 2004

and that all other issues regarding plaintiff's claims for the collateral benefits and

damages be deferred until future proceedings as may be directed by the Court.

Dated:  May 29, 2008.                    Respectfully submitted,

                                         THE KOFOED LAW FIRM, LLC


                                         /s/ David L. Kofoed
                                         David L. Kofoed, #3807
                                         Attorney at Law
                                         6841 S. Yosemite St., Suite 3A
                                         Centennial, CO 80112
                                         (303) 721-8877
                                         (303) 721-9352 fax
                                         email:  kofoedlawfirm@qwest.net


                                         /s/ John A. McCahill
                                         John A. McCahill, #146159
                                         Attorney at Law
                                         131 Tollgate Way
                                         Falls Church, Virginia 22046
                                         (703) 819-1662
                                         (202) 783-6031 (fax)
                                         email:  jamccahill@aol.com

                                         *Attorneys for Plaintiff, Fred Ladd*

# APPENDIX 1

# EMPLOYMENT AGREEMENT



CHEMONICS INTERNATIONAL INC.

EMPLOYMENT AGREEMENT

This agreement is made this September 5, 2003, between CHEMONICS INTERNATIONAL INC. (hereinafter "Chemonics"), a corporation organized and existing under the laws of District of Columbia, and Fred Ladd, 1975 Spring Valley Drive, Colorado Springs, CO 80921 (hereinafter "employee").

Under Chemonics' contract agreement with the U.S. Agency for International Development ("USAID") for the Iraq Local Governance Project Civic Institution Support Program (Contract No. EDG-C-00-03-00010-00), for the provision of technical assistance and related services to client and government organization, Chemonics wishes to retain the services of the employee, Fred Ladd, to serve under this contract pending approval of the USAID Contracting Officer and RTI.

Chemonics and the employee agree as follows:

I.    Appointment

Chemonics hereby appoints the employee as Municipal Utility Specialist for the Local Governance Program in Iraq for the aforementioned contract, to begin work on or about September 16, 2003. This employment is conditional upon clearance of the required medical exam.

II.    Scope of work and performance of duties

The employee shall provide technical assistance, direction and insight in program implementation and management to strengthen local and municipal administrations, civic institutions and political processes in Iraq. Activities will respond to a broad range of challenges in sub-national administration, democratic institutions and processes. The employee will participate in the program development and oversight of capacity development activities for local and municipal governments to improve their financial and managerial performance and to assess and improve municipal services and infrastructure. Additionally, the employee may be requested to engage in various tasks as called for by USAID approved work plans. Please refer to the attached summary for additional information on the project. Details of more precise tasks will be articulated at a later date.

| | | |
|---|---|---|
| Employee | Senior Manager | Senior Vice President |

Employment Agreement
Fred Ladd
Page 2

The contract terms of reference for said position are subject to amendment at anytime by Chemonics, RTI and/or USAID. The referenced contract scope of work has been provided to the employee and is always available in Chemonics home and in the field office for review. In accepting this employment, the employee agrees he will not hold Chemonics liable in any way for alterations in the scope or nature of work that may be made by Chemonics, RTI and/or USAID. The employee further agrees to perform his duties faithfully and to the best of his ability, to comply with local laws and customs, and to conduct himself in a manner appropriate to Iraq.

III.    Reporting

While in Iraq, the employee will report directly to RTI's Chief of Party, Peter Benedict, or any successor appointed by RTI. Mr. Benedict is responsible for monitoring employee performance under the terms of the contract. The employee will also report to Chemonics Home Office Senior Manager, Dennis Chandler or his designee.

IV.    Salary

The base salary for the employee for the first year of project work has been proposed at US $131,250 per year, or a monthly rate of US $10,937.50. Salary is pending approval by RTI/USAID. Annual salary increases may be granted in accordance with Chemonics' customary policy and are subject to the approval of USAID. Neither the rate nor amount of salary increase is guaranteed under the terms of this agreement. Salary increases are also subject to company guidelines, individual performance, and client approvals.

V.    Contract allowances

The employee will receive cash payments and allowances relating to USAID allowances for overseas employees only as specified by the attached contract, and in accordance with prevailing USAID regulations. Contract allowances and benefits, and governing regulations, are detailed in the contract, annexes, and the enclosed benefits and allowances summary. You are responsible for conforming to all regulations as detailed in the contract and allowances summary. Such allowances, including post differential, post allowance, danger pay, living quarters allowance, and per diem, are established by USAID and rates for these allowances are subject to change at any time. Chemonics thus reserves the right to make changes in or reduce these allowances at its discretion.

VI.    Employment at will

_____    _____    _____
Employee                   Senior Manager              Senior Vice President

Employment Agreement
Fred Ladd
Page 3

The employee shall be considered an employee at will for the duration of employment covered under this agreement. Employment may be terminated by the employee or by Chemonics at any time and for any reason. No person other than Chemonics' president has the authority to enter into any oral or written employment agreement for a specific period of time or make any agreement contrary to this clause.

## VII.  Termination of employment

Employment may be terminated at any time by Chemonics or by the employee for any reason. Should the employee be terminated for misconduct, dereliction of duty, or gross failure to perform satisfactorily, or should the employee voluntarily resign without obtaining prior written consent of Chemonics' home office, Chemonics will not be liable for salary or related costs beyond the date of employment termination. When terminated for the reasons listed here in VII, the employee shall also be liable for any relocation costs not allowable for U.S. government reimbursement, as stated in VIII.5 of this agreement.

## VIII.  Repatriation

Chemonics will absorb the costs of repatriating the employee, employee's family (if applicable), and personal effects only in accordance with the applicable USAID contract allowances and eligibility requirements and under the following conditions:

1.  The employee's assignment is successfully completed; or

2.  The employee is terminated for reasons related to performance, but Chemonics deems said reasons to be beyond the employee's control and unrelated to misconduct, dereliction of duty, or gross failure to perform satisfactorily; or

3.  The employee is unable to continue working for medical reasons, having executed and submitted the standard State Department medical form as provided by the contract, prior to departure to the field; or

4.  The contract itself is terminated for reasons Chemonics, solely, deems to be beyond its control as Contractor; or

5.  The employee voluntarily resigns and Chemonics concurs in writing the circumstances of the resignation. Chemonics will absorb the employee's relocation costs if the employee completes

_____        _____        _____
Employee                               Senior Manager                        Senior Vice President

Employment Agreement
Fred Ladd
Page 4

the requirements for government reimbursement of relocation costs per AIDAR 752.7002. If the employee does not meet these requirements, the employee will be responsible for the applicable costs of employee (and family, if applicable) travel and effects transportation to and from the post of duty.

6.  Employee expressly acknowledges and agrees that, if Chemonics pays the employee's repatriation/relocation costs and/or travel advances and determines that the employee is responsible for such costs, Chemonics is authorized to withhold the repatriation costs from the employee's final pay and/or any reimbursement check owed to the employee. No additional authorization is needed from the employee to effectuate this withholding in the future.

## IX.  Deductions

The employee agrees and acknowledges that Chemonics is authorized to make deductions from my pay during my employment and, upon termination, from my final paycheck, for expenses incurred by me in connection with my employment with Chemonics or for any other outstanding financial debt I may have to Chemonics.

## X.  Data ownership

To the extent that ownership of the employee's reports, research, data, and other work is not covered by the attached contract, ownership of all such materials rests with Chemonics. All working papers and materials gathered during the assignment must be delivered to Chemonics upon the conclusion of employment. The employee agrees not to publish or make any other use of such materials without the prior approval in writing of Chemonics.

## XI.  Conflict of interest

The employee may not engage in any business, profession, or occupation in Iraq, or any other country to which the employee may be assigned through this contract. This includes loans to or investments in any business in Iraq, and extends to direct or indirect employment either in the employee's name or through the agency of another person.

## XII.  Legal agreement

This agreement shall be binding upon the employee and Chemonics, and on their respective successors, heirs, and assignees. Either party may assign this agreement only with the prior

| _____ | _____ | _____ |
| Employee | Senior Manager | Senior Vice President |

Employment Agreement
Fred Ladd
Page 5

written consent of the other. This agreement shall be interpreted and construed under and in accordance with the laws of the District of Columbia. The parties hereby expressly agree and acknowledge that the courts of the District of Columbia shall have sole and exclusive jurisdiction over any dispute arising under or otherwise relating to this agreement. The parties agree that any such disputes shall not be brought before any foreign court, administrative agency, or other legal body, but shall be under the sole and exclusive jurisdiction of the courts of the District of Columbia as stated above. Should either party breach this clause by bringing a dispute before a foreign court, administrative agency, or other legal body, the parties agree as follows: the non-breaching party shall be entitled to liquidated damages at a sum equal to three (3) months salary of the employee's last wage under this agreement and preceding the breach.

## XIII.  Medical Clearance

In accordance with USAID regulation, the employee hereby certifies that prior to his fielding the required physical examination will be completed. As stated above, employment is conditional on the outcome of the required medical exam.

## XIV.  Acceptance of agreement

Acceptance of the terms of this agreement shall be indicated by both parties on the lines provided below and by initialing each page of this agreement. The parties hereby accept the terms of this agreement:

_____          9/5/03
Richard Breitenstein                                              Date
Project Administrator
Middle East

_____          Sept 11, 2003
Fred Ladd                                                            Date

Social Security No.:  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

Location Signed:  Colorado Springs, CO


_____   _____   _____
Employee                      Senior Manager            Senior Vice President

# APPENDIX 2

# EARNINGS STATEMENT

| CO. | FILE | DEP. | CLOCK | VCHR NO. | 082 |
|-----|------|------|-------|----------|-----|
| PHQ | 008594 | 360 | /2 | 0000450093 | 1 |

# Earnings Statement

**ADP**

CHEMONICS INTERNATIONAL, INC.
1133 20TH STREET N.W.
WASHINGTON, DC 20036

Period Ending:  10/31/2003
Pay Date:  11/10/2003

Taxable Marital Status:  Married
Exemptions/Allowances:
Federal:  7,Tax Blocked
CO:  7

00000000093
FRED C. LADD
1975 SPRING VALLEY
COLORADO SPRINGS, CO 80921

Social Security Number:  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

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 10937.50 | | 10,937.50 | |
| Cola | | | 1,492.00 | 1,492.00 |
| Other | | | 2,112.93 | 2,112.93 |
| Post Pay | | | 2,112.93 | 2,112.93 |
| Sick | | 32.00 | | |
| Reg Exempt | | | | 3,977.28 |
| **Gross Pay** | | | **$16,655.36** | 20,632.64 |

| Other Benefits and Information | this period | total to date |
|--------------------------------|-------------|---------------|
| G.T.L. | 102.87 | 205.74 |
| Sick Balance | | -18.68 |
| Vacation Bal | | 33.34 |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Social Security Tax | -1,029.22 | 1,272.39 |
| | Medicare Tax | -240.70 | 297.57 |
| | Other | | |
| | Dd Checking | -12,040.16 | |
| | Dd Checking | -3,000.00* | |
| | Health | -158.00* | 316.00 |
| | Opt Life | -187.28 | 374.56 |
| | **Net Pay** | **$0.00** | |

\* Excluded from federal taxable wages

Your federal taxable wages this period are
$16,497.36

© 2001 ADP, Inc.



VERIFY DOCUMENT AUTHENTICITY. COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM.

CHEMONICS INTERNATIONAL, INC.
1133 20TH STREET N.W.
WASHINGTON, DC 20036

Advice number:  00000450093
Pay date:  11/10/2003

Deposited to the account of
FRED C. LADD

| | account number | transit ABA | amount |
|--|----------------|-------------|--------|
| | 026055 | 1070 0569 | $12,040.16 |
| | 0034205005 | 3224 8402 | $3,000.00 |

VOID AFTER 180 DAYS

WACHOVIA

THIS IS NOT

NON-NEGOTIABLE

# APPENDIX 3

# LADD AFFIDAVIT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRED LADD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 07-1360 |
| | ) | (CKK/JMF) |
| | ) | Next scheduled court deadline: |
| CHEMONICS INTERNATIONAL, INC. | ) | March 4, 2008 – Mediation |
| a/k/a CHEMONICS | ) | |
| | ) | |
| Defendant. | ) | |

### AFFIDAVIT OF FRED LADD

I, Fred Ladd, being first duly sworn under oath depose and say as follows:

1.    I am the plaintiff in this case.

2.    The Employment Agreement on which this action is based was prepared and drafted by Chemonics and I had nothing to do with the preparation or drafting of that agreement.

3.    Pursuant to the agreement, I was assigned to support Research Triangle Institute in Al Kut Iraq and on October 23, 2003 I was assigned to ride in a vehicle to transport me to a Iraqi irrigation pumping facility.  The vehicle in which I was riding was driven by an Iraqi who lost control of the vehicle and it crashed into the Tigress River.  Accordingly, I was injured severely through no fault of my own and have been disabled since that time.  I have attached a copy of Dr. Lamond's report referencing that disability.

4.    It is my belief that since October 2003 I have never been paid any salary or other of the benefits referred to in the contract.

Further affiant sayeth not.

_Fred C. Ladd_
FRED LADD

State of Colorado    )
                     )    ss.
County of Arapahoe   )

Subscribed and sworn to before me this 3rd day of March, 2008 by Fred Ladd.

_Elena Best_
Elena Best, Notary Public

ELENA BEST
NOTARY PUBLIC
STATE OF COLORADO

MY COMMISSION EXPIRES: 05/24/2010

# APPENDIX 4

# LETTER FROM CHEMONICS
# DATED DECEMBER 8, 2004



CHEMONICS INTERNATIONAL INC.

December 8, 2004

Mr. Fred Ladd
1975 Spring Valley Drive
Colorado Springs, CO 80921

Dear Fred:

This letter serves to summarize your discussion on November 23, 2004, regarding your end of assignment and employment with Chemonics International.

You have been out on disability since October 23, 2003. In accordance with Chemonics policy, we granted you 16 weeks of Family and Medical Leave. We also filed the required paperwork needed to receive benefits for worker's compensation on the Defense Base Act (DBA).

Based upon the information currently in our possession (and upon our recent conversation), we understand that you remain unable to perform the essential functions of your position with or without a reasonable accommodation. It is also our understanding that you do not have a definite date upon which you may be able to return to work and perform the essential functions of your position. If our understanding regarding your condition and inability to work are incorrect, please contact me immediately. It is also our understanding that the official end date of your assignment on the LGP project was scheduled to be October 1, 2004. Since you were hired as an employee specifically for this project, and you remain unable to work, we must inform you that your employment with Chemonics will terminate as of December 23, 2004.

Although you will no longer be employed with Chemonics, so long as you are disabled and you continue to satisfy the terms and conditions under DBA, the DBA insurance provider, CNA, will continue to pay you this benefit. Your remaining group insurances of health, company paid and (additional) optional life insurance, and accidental death and dismemberment will terminate as of midnight December 31, 2004.

As discussed, you if you wish to continue your Chemonics health insurance coverage, you can do so by applying for the coverage through COBRA. To apply for this coverage, please fill out and return the attached COBRA notification and application. So long as you are considered disabled, you are eligible to remain on COBRA for twenty-nine months from January 1, 2005. Additionally, because of your special circumstances, Chemonics has agreed to pay for the cost of the premium (both the employee and the employer portions) during your entire COBRA eligibility. The COBRA costs covered by Chemonics during 2005 are estimated at $735 per month. This cost will increase over the twenty-nine month period of coverage.

If you wish, your company paid life insurance may be converted to individual policies under your name. The terms and conditions of this conversion is based upon Prudential's individual



EXHIBIT

FL000129

insurance practices in junction with state mandates. Please let us know if you wish to pursue insurance conversions.

We are truly appreciative of your contributions to Chemonics and the Iraq LGP project. In the future, if your condition improves and you are able to go back to work, we will consider you for any open positions which match your qualifications. Our thoughts and prayers are with you, and we hope for your full recovery. If we can help with anything else, please feel free to contact us at your convenience.

Sincerely yours,

Peter Bittner
Sr. Vice President

# APPENDIX 5

# LETTER FROM CHEMONICS
## DATED APRIL 28, 2005



CHEMONICS

Date:  April 28, 2005
To:    Mr. and Mrs. Fred Ladd
Fr:    Kevin Duffy, Personnel Manager
RE:    Notice of Right to Continuation of Health Benefits Under COBRA

    Qualifying Event:    **Disability**

--------------------------------------------------------------------------------------

We have indicated that your last day of employment with Chemonics International Inc. is December 23, 2004. As such, your health coverage through BlueCross BlueShield will end the midnight of May 07, 2005.

Because of this qualifying event, you and your affected family members who are not already covered by Medicare, may choose to continue your group health plan coverage enjoyed immediately prior to the qualifying event.

To continue group health plan coverage, please indicate below the coverage you wish to continue. Under the law, you have sixty (60) days from the date of this notice to notify us of your intent to continue coverage, and another forty-five (45) days before payment is due. However, no coverage will be provided nor claims honored during the 60-day election period and/or the 45-day grace period unless the premiums are paid. To ensure uninterrupted coverage, it is best to submit payments as per the example on page 4.

It is very important to return your election form as promptly as possible. If you do not return your election form to us within 60 days of the date of this notice, your right to continue coverage will terminate automatically and, once terminated, cannot be reinstated.

FL000157

# APPENDIX 6

# PLAINTIFF'S ANSWERS TO INTERROGATORIES

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FRED LADD                              )
                                       )
    Plaintiff,                       )
                                       )
    v.                               )        CIVIL ACTION NO. 07-1360 (CKK/JMF)
                                       )        Next scheduled court deadline:
CHEMONICS INTERNATIONAL, INC.          )        January 15, 2008 – Proponent's
a/k/a CHEMONICS                        )        Rule 26(a)(2)(B) Statement
                                       )
    Defendant.                       )

### PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiff Fred Ladd hereby responds to defendant Chemonics International, Inc.'s First Set of Interrogatories:

### GENERAL OBJECTIONS

1.    Plaintiff objects to each interrogatory request to the extent that it seeks to impose obligations different of those imposed pursuant to Rule 26 and 34 of the Federal Rules of Civil Procedure.

2.    Plaintiff objects to each discovery request to the extent that it seeks the disclosure of information protected under the attorney-client privilege, the Work Product Doctrine or 26(b)(3) of the Federal Rules of Civil Procedure.

3.    Plaintiff objects to each discovery request to the extent that it seeks the disclosure of information, documents or tangible things outside of his possession, custody or control.

Subject to the foregoing, plaintiff submits the following specific objections and responses:



## INTERROGATORIES

**INTERROGATORY NO. 1:** Without regard to the manner by which the information has been obtained, identify each and every person who Plaintiff believes or suspects has knowledge of any facts in any way relating to any issue raised by Plaintiff's Complaint, and provide a detailed description of the knowledge believed to be possessed by each such person, all issues contained in Plaintiffs Complaint as to which each such person is believed to possess, facts and all documents, if any, which each such person is believed to have reviewed or has in his or her possession.

**RESPONSE:**

Plaintiff's complaint is based upon the contract entered into with Chemonics in which I was to be paid by compensation until I was terminated. I personally know exactly what I expected which was that I would be paid my compensation until I was terminated. There is no doubt in my mind that the persons who entered into the contract with me knew precisely what they were doing. Chemonics put together the contract and the persons who executed the agreement on the behalf of Chemonics I assume, know what they signed. Mr. Bittner was the person who terminated my employment in December of 2004 and I assume he had knowledge of everything regarding my situation. The documents which would be in the possession of people having knowledge about this issue would be the Chemonics personnel who understood the amount of the benefits to which I was entitled and who understood the meaning of the contract.

**INTERROGATORY NO. 2:** Identify, by providing the name, address and home and business telephone numbers, each and every person Plaintiff, his agents, representatives, or other persons acting on his behalf have had conversations with, or from whom written statements have been taken, relating in any way to this lawsuit, including the dates all such conversations were had or statements were taken and describe in detail the subject matter covered in each conversation or statement. Identify all relevant documents.

**RESPONSE:**

I do not recall having conversation with anyone except my wife and my attorney relating to this lawsuit. In general, I did have conversations with Channel 11 News in Colorado Springs when they called to interview me, the OTI group at church, Rich Griffith and the youth group at my home when they offered me help with yard work, several family members, and church groups who have helped me maintain my home in my desperation. All of these were general conversations relating to my predicament an

none of these were involving written statements, but were only oral statements generally. They were not necessarily conversations, but responses to questions about what happened to me and I do not know precisely the names, addresses, telephone numbers and business numbers of those persons who may have been listening.

INTERROGATORY NO. 3:    Identify all injuries, illnesses, or other medical problems you have ever suffered for which you have seen a physician or nurse during the last 10 years. Please identify all the physicians or hospitals who have treated you. If you have one or more family physicians, please list them. For each such injury, illness or other medical problem, please state: (a) the nature and symptoms of the injury, illness, or medical problem; (b) the circumstances surrounding and cause of the injury, illness or medical problem; (c) the nature of any medical problem including the identity of the person(s) administering the treatment as well as the time and place of such treatment; and (d) the identity of all communications and documents which refer to, relate to or memorialize the injury, illness, or medical problem.

RESPONSE:

Objection. Plaintiff objects to this Interrogatory as overbroad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objection, except for normal physician or dental visits, the injuries I received as a result of the October 23, 2003 accident are as follows:

The pain began at the scene of the accident and continues to date. My right arm was crushed below the shoulder, the deltoid muscle was partially torn off and one nerve was destroyed and four damaged from the seat belt. My left leg was broken below the knee and was crushed above the knee. My head was damaged by hitting the window. Glass was imbedded in my head and arm. I was not conscious all the time, but I was placed in the back of a pickup truck bed and transported to Al Kut. While at the hospital in Al Kut, a stabilizer bar was placed in my left leg and pain medication was prescribed. I was then transported via helicopter and flown to Baghdad to the military hospital where the doctors tried to stabilize me. I was in severe pain while the doctors were trying to stabilize me and then after two days was transported to Germany at the military hospital

there. At that hospital, they eventually transported me to a reserve medical group and I
was given pain medicine for my trip to Andrew Air Force Base. I was then transported
to Andrews Air Force Base and then to George Washington University Hospital
emergency room on November 2, 2003. The doctors at George Washington University
Hospital began working on cleaning out my infected wounds which I was told was
caused by the contaminated water of the Tigress River. I recall that I underwent an
operation every other day until they transported me to Colorado Springs on December
22, 2003. At George Washington University Hospital I received many tests on my
nerves and braces were placed on my arm and leg. Plates could not be used because
of my infections.

I was ultimately taken to Colonial Columns Rehabilitation for testing. I began using a
wheelchair. My headaches were worsening from taking so much morphine so I was
given a prescription for Oxyicotton and Occocodine

I was then referred to Dr. Wilkes in Denver where my braces were removed. I also saw
Dr. Lamond who removed a nerve from my right leg and inserted it in my right arm. He
also cleaned out the scarring from my shoulder to my elbow to free up the remaining
four nerves. I was then released to go home on April 16, 2004. I began therapy at
Healthsouth and continued until I believe sometime in July. I was then assigned a
physical therapist at home. My doctor told me that my left leg could break above the
knee within the next 10 years. On my second physical therapy treatment, my leg did in
fact break and a plate had to be inserted into my leg. I began seeing doctors three
times a week for physical therapy, massage and activation for my arm and leg, and
chiropractic treatment. I see many doctors for my eyes, ears, shoulder, hands, heart,
and my mental and emotional health. My shoulder may need replacement. I have had
approximately 30 operations since the accident and will probably need my shoulder and
knee replaced. I am always in pain and I have had marital problems because of all of
my medical and emotional problems.

To my knowledge, I was treated by following care providers as a result of the October
23, 2003 accident, but there could be more:

Landstuhl Regional Medical Center
Dept. of the Army
The George Washington University, 2150 Pennsylvania Ave., Washington, DC 20037
(202) 741-3550

Presbyterian/St. Lukes, 1719 E. 19th Avenue, Denver, CO 80218 (303) 839-6000

RESPONSE:

None to my knowledge.

INTERROGATORY NO. 10:      Please identify all documents referred to, identified by or in any way related to these Interrogatories and Plaintiffs Answers hereto, including all documents which Plaintiff consulted or relied upon in formulating his Responses to these Interrogatories, whether or not specifically identified in Plaintiffs Responses. In so identifying these documents, state to which Interrogatory or Interrogatories each document relates.

RESPONSE:

All documents relevant to my employment, termination, performance and conditions of my disability are within the control of Chemonics. The contract that was entered into is clearly in the possession of Chemonics, as well as the letter which terminated me and Chemonics has the information relative to the amount of compensation and benefits to which I was entitled and am still entitled to this date.

INTERROGATORY NO. 11:      Identify and describe in detail all income, compensation, benefits, bonuses, dividends or other items of value received by Plaintiff from any source (whether as an employee, independent contractor, government benefits, or otherwise), including but not limited to workers' compensation, for the period from October 23, 2003 to the present and identify each such item of income, compensation, benefits, bonuses, dividends or other items of value, the entity from which each such item was received, the amounts of each, and the date(s) of receipt.

RESPONSE:

My base salary for the first years project work would have been $131,250.00 per year or a monthly rate of US $10,937.50 and in addition, I was to receive cash payments and allowances relating to US Aid allowances for overseas employees and benefits the aggregate amount of which would have exceeded $13,000 a month during the term of my employment.  It was contemplated that my employment there would continue for at least three to four years and perhaps longer depending upon circumstances.  I received the initial monthly payments for only part of September and the month of October 2003. Thereafter, I only received the disability benefit provided under the Defense Base Act of $1,030.78 per week.  In addition to the actual loss of income, I was also suppose to receive life insurance and health insurance for myself and my family, one months

vacation which included accommodations of me being able to go any place in the world with my family being flown to me. It is my belief that the life insurance that I was suppose to receive would have been probably over $200,000 and I was also suppose to receive accident, life and disability insurance. I have not been able to calculate exactly the value of those items, however, would project that the value to me of those items would have been worth least an additional $2,.000 a month. The health insurance alone which I was to have received for myself and my family was over $700.00 per month which was not paid after a few months following the injury so that Mr. Ladd had to maintain coverage from his own expense.

INTERROGATORY NO. 12:    State your educational background, including, all degrees, certifications and licenses you have received to date. For each such degree, certification or license, please state: the granting institution; dates of attendance; date of acquisition; whether you have continuously maintained such degree, license or certification to the present date; and whether you informed Defendant that you held such degree, license or certification, and if so, on what date, how, and to whom you conferred such information. Identify all documents relevant to the foregoing answer.

RESPONSE:

Objection. Plaintiff objects to this Interrogatory as not being reasonably calculated to lead to discovery of admissible evidence. Without waving such objection, plaintiff states:

I have a BS Degree Civil Engineering from Oklahoma State University granted in 1966. I have a Masters Degree from the Civil Engineering Department in Environmental Engineer granted in 1968 from Oklahoma State University. I am a registered Professional Engineer and Land Surveyor in Colorado and continue to keep the registration current. I have been registered as a professional engineer in Wyoming and Nevada, but they are not current. I am also registered as a Professional Engineer in Arizona. I have attended professional classes until the accident, but have not been able to continue with classes since my accident. I had registered with California Coastal University for a PHD in Engineering management and completed parts of two courses, but due to the injuries have not continued with the coarse work. The information was submitted on my application to Chemonics.

INTERROGATORY NO. 13:    State the basis for your allegation in Paragraph 9 of the Complaint that, even though Ladd has received and is receiving total disability benefits under the Defense Base Act ("DBA"), that "he was also to be paid compensation for partial compensation for loss of earnings. ...

RESPONSE:

The basis for that claim is the employment contract itself and the letter from the Sr. Vice President, Mr. Bittner as to when I was officially terminated in December 2004.

INTERROGATORY NO. 14:        Identify all facts, including the identity of any witnesses and/or documents, which you contend support your allegation in Paragraph 9 of the Complaint that, even though Ladd has received and is receiving total disability benefits under the DBA, that "he was also to be paid compensation for partial compensation for loss of earnings. ...

RESPONSE:

The document is the employment contract. In addition, the letter from the Sr. Vice President, Peter Bittner, stating the exact date of my termination in December 2004. .The witnesses would be myself and we presume witnesses could be Mr. Bittner and whomever else from Chemonics that was involved in the execution of the contract.

INTERROGATORY NO. 15:        Identify all "collateral benefits provided for and associated with the contract" referred to in Paragraph 9 of the Complaint that you contend Ladd was entitled to and identify all facts, including the identity of any witnesses and/or documents, which you contend support this assertion.

RESPONSE:

See my answer to Interrogatory 11 above.

My base salary for the first years project work would have been $131,250.00 per year or a monthly rate of US $10,937.50 and in addition, I was to receive cash payments and allowances relating to US Aid allowances for overseas employees and benefits the aggregate amount of which would have exceeded $13,000 a month during the term of my employment. It was contemplated that my employment there would continue for at least three to four years and perhaps longer depending upon circumstances. I received the initial monthly payments for only part of September and the month of October 2003. Thereafter, I only received the disability benefit provided under the Defense Base Act of $1,030.78 per week. In addition to the actual loss of income, I was also suppose to receive life insurance and health insurance for myself and my family, one months vacation which included accommodations of me being able to go any place in the world with my family being flown to me. It is my belief that the life insurance that I was suppose to receive would have been probably over $200,000 and I was also suppose to receive accident, life and disability insurance. I have not been able to calculate exactly the value of those items, however, would project that the value to me of those items

would have been worth least an additional $2,.000 a month.   The health insurance alone which I was to have received for myself and my family was over $700.00 per month which was not paid after a few months following the injury so that Mr. Ladd had to maintain coverage from his own expense.

This answer only contemplates the amount which I have lost since December 2004 and does not include the additional loss.

Because of my loss of income I have been unable to pay a tax bill which would have been paid had I had the income from my employment in Iraq.  That tax bill has therefore drawn interest and penalties of approximately $100,000 which would not have been incurred had the employment continued.  In addition, I have had extensive travel expenses for treatment to all types of medical facilities over the last 3-1/2 years, in addition, I have incurred over $3,000 of accountant billings working with the IRS over these amounts due.  I have also suffered miscellaneous damages which I have not yet had the opportunity to calculate such as interest on other bills which I have been unable to pay and some of which are in collection activity and will likely also include attorneys fees and costs.  The benefits which I have received are those referred to above  and in addition, I know that some of the medical bills have been paid by either Blue Cross Blue Shield or CNA Insurance, however, I still do not know exactly how much they have paid. CNA should have all of the records regarding those payments.

INTERROGATORY NO. 16:     State the basis for your contention in Paragraph 12 of the Complaint that Chemonics "agreed to provide life insurance benefits and agreed to pay for the cost of the premiums to cover COBRA eligibility for as long as Mr. Ladd was disabled up to 29 months.. .·

RESPONSE:

That was the agreement made by Chemonics.

INTERROGATORY NO. 17:     Identify all facts, including the identity of any witnesses and/or documents, which you contend support your contention in Paragraph 12 of the Complaint that Chemonics "agreed to pay for the cost of the premiums to cover COBRA eligibility for as long as Mr. Ladd was disabled up to 29 months. ..
RESPONSE:

That was the agreement that was made with me by Chemonics.  The documents reflecting same would be documents in the possession of Chemonics including correspondence from Chemonics.  Witnesses would be myself and we assume the personnel with Chemonics, including Mr. Bittner and including Mr. Duffy and Mr. Mesnard and probably others within the Chemonics organization.

my answers above. The punitive damages and the damages available by virtue of violation of relevant laws would only be such which could be assessed by the court or the jury. The documents which reflect my claim are the contract itself as well as the termination letter and as well as the Chemonics documents themselves reflecting the scheduled compensation and benefits to which I was entitled to but were not paid.

As an addition to the above answers, it should be noted that at this point, I have no idea as to whether or not Chemonics or their carrier has paid all of the medical benefits and billings which have been incurred as a result of my injuries. We have requested information as to what they have paid through my attorney, but have received no such itemization and therefore, we reserve any claims regarding unpaid medical bills about which we have received no information. It is my great concern that many of these benefits and medical bills have not been properly paid. However, without the cooperation of Chemonics and their carrier, I have no independent knowledge of the precise amount of what has been paid or what remains outstanding. I do know for a fact that the hospital from Landstal in Germany has not been paid.

FRED LADD

STATE OF COLORADO    )
                     ) ss.
COUNTY OF ARAPAHOE   )

Subscribed and sworn to before me this _18th_ day of _December_, ~~2005~~ 2006.

Witness my hand and official seal.

ELENA BEST, Notary Public

My Commission expires:  5/24/10

> ELENA BEST
> NOTARY PUBLIC
> STATE OF COLORADO
> MY COMMISSION EXPIRES: 05/24/2010

## *CERTIFICATE OF SERVICE*

The undersigned hereby certifies that on this 19th day of December, 2007 a true and correct copy of the foregoing PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES was deposited in the US Mail, postage prepaid to the following:

James M. Mesnard
SEYFARTH SHAW LLP
815 Connecticut Avenue, NW
Suite 500
Washington, DC 20006-4004

_Elena Best_
ELENA BEST

# APPENDIX 7

# MEDICAL RECORD OF
# DR. LAMOND

# WESTERN NEUROLOGICAL GROUP, P.C.

1601 E. 19ᵗʰ Avenue, Suite 4400, Denver, CO 80218-1216 (303) 861-2266 FAX (303) 830-7054

NEUROLOGICAL SURGERY
Stephen D. Johnson, M.D.
Roderick G. Lamond, M.D.

June 7, 2006

RE: Fred C. Ladd

To Whom It May Concern:

Mr. Ladd suffered a severe, devastating injury to his right upper extremity in October 2003 while on a consulting assignment in Iraq. This left him with severe musculoskeletal soft tissue and vascular injuries and neurologic deficit in his right upper extremity.

He underwent extensive surgical treatment to his right upper extremity. He has, in fact, had preservation of his limb but with significant neurologic residual deficits.

It should be made quite clear that his injuries to the right upper extremity have left him with a permanent disability and that he will never recover to his pre-injury status.

Sincerely,

Roderick G. Lamond, M.D.

RGL:jkb
xc: Mr. Peter Bittner, Senior Vice President
    Chemonics International, Inc.
    Fax # (202) 955-7570

    David Kofoed, Attorney at Law
    Fax # (303) 721-9352

    Jill Zerkle, Attorney at Laqw
    Fax # (800) 340-1084

# APPENDIX 8

# MEDICAL BILL FROM
# LANDSTUHL HOSPITAL IN GERMANY

# DEPARTMENT OF THE TREASURY
## FINANCIAL MANAGEMENT SERVICE
### BIRMINGHAM, AL 35283-0794

October 28, 2006

FRED LADD
1975 SPRING VALLEY
COLORADO SPRING, CO 80921

FedDebt Case Identification: 2006263924A

Dear FRED LADD:

Your unpaid delinquent debt owed to the Department of Defense, Defense Finance and Accounting Service, DoDDCM, has been referred to the U.S. Department of the Treasury for collection. According to the records of the Department of Defense, you owe $49,600.29.

Collection action will continue unless you make payment, within ten (10) days from the date of this letter, in the amount of $63,488.37, which includes all applicable fees, interest, and penalties, as of today.

If you wish to avoid further collection action and additional charges, you must immediately pay your debt. Your check or money order should be made payable to the U.S. Treasury-FMS. To ensure proper credit to your account, please include the FedDebt Case Identification Number 2006263924A in the memo section of your payment. Please note that we accept credit card payments via MasterCard, Visa, or Discover.

Please send your payment with the attached PAYMENT COUPON to: U.S. Department of the Treasury - FMS
Debt Management Services
Post Office Box 105576
Atlanta, GA 30348

Correspondence should be mailed to: U.S. Department of the Treasury
Debt Management Services
Post Office Box 830794
Birmingham, AL 35283-0794

If you are unable to pay your debt in full, please contact a Customer Service Representative toll free at (888) 826-3127, or the Telecommunications Device for the Deaf (TDD) at (866) 896-2947.

U. S. Department of the Treasury
Debt Management Services

EXHIBIT

---

DSBDL__003_ fdv1

Detach Here
PAYMENT COUPON

00000040552006263924A DL__0042708022 108

FedDebt Case Identification Number: 2006263924A
Amount Due: $63,488.37
Amount Enclosed: _____

FRED LADD
1975 SPRING VALLEY
COLORADO SPRING, CO 80921

METHOD OF PAYMENT (check one):
*Make check/money order payable to: U.S. Department of Treasury - FMS*
☐ Personal/Company Check  ☐ Money Order  ☐ Bank Check
☐ Visa  ☐ MasterCard  ☐ Discover

Credit Card Account Number: _____

Remit to:
U.S. Department of the Treasury -- FMS
Debt Management Services
Post Office Box 105576
Atlanta, GA 30348

Expiration Date: _____   Authorized Amount:_____

Authorized Signature: _____



105576 2006263924A 0006348837 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRED LADD                                          )
                                                   )
    Plaintiff,                 )
                                                   )          CIVIL ACTION NO. 07-1360
    v.                         )          (CKK/JMF)
                                                   )          Next scheduled court deadline:
CHEMONICS INTERNATIONAL, INC.   )          March 4, 2008 – Mediation
a/k/a CHEMONICS                 )
                                                   )
    Defendant.                 )

## ORDER

    This matter having come before the Court on plaintiff's Motion for Partial Summary Judgment pursuant to Rule 56 and the Court having reviewed same, it is now ordered that plaintiff's Motion is granted to the extent that the defendant is liable to the plaintiff as an employee for the salary and collateral benefits referred to in the agreement until his date of termination of December 23, 2004 and further orders that the remaining issues of the amounts claimed for collateral benefits and damages are deferred for future proceedings as the Court may direct.

    Done and signed this _____ day of _____ 2008.

                        By the Court:

                        _____
                        UNITED STATES
                        DISTRICT JUDGE